UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL A. KEENAN, )<br>      )<br>    Plaintiff, )<br>v. )<br>      )<br>INTERNATIONAL ASSOCIATION OF )<br>MACHINSTS AND AEROSPACE )<br>WORKERS, et al. )<br>      )<br>    Defendants. ) | Case No. 2:10-cv-377-GZS |

**ORDER ON MOTION FOR SANCTIONS**

Before the Court is Defendant International Association of Machinists and Aerospace Workers, Defendant R. Thomas Buffenbarger and Defendant Lynn D. Tucker, Jr.'s (collectively "Defendants") Motion For Sanctions (ECF No. 71) ("Defendants' Motion"). For the reasons briefly stated below, the Court DENIES Defendants' Motion For Sanctions (ECF No. 71).

**I.     BACKGROUND**

The Court presumes familiarity with the general background of this case. A detailed description of the facts of this case on summary judgment can be found in the Court's Order On Motion For Summary Judgment.

On July 30, 2009, the Special Trial Committee ("STC") of the International Association of Machinists and Aerospace Workers ("IAM") found Plaintiff Michael Keenan guilty on nine of the fifteen charges brought against him and recommended that he be disqualified from holding union office for four years. On August 6, 2009, IAM International President Defendant R. Thomas Buffenbarger accepted the STC verdict and recommendation.

The IAM Constitution provided for an appeal process for Buffenbarger's acceptance of Keenan's guilty verdict and penalty to the Union's Executive Council. (IAM Constitution, dated

Jan. 1, 2005 (ECF No. 62-26) at Page ID # 3651.)  Under the IAM Constitution, any appeal had to be filed in writing within thirty days of Buffenbarger's acceptance and sent to the General Secretary-Treasurer ("GST").  (Id.)  Defendants have presented evidence that the GST did not receive a written appeal from Keenan or any written correspondence from Keenan after August 6, 2009.  (Aug. 28, 2012 Shemanski Decl. (ECF No. 70-15) ¶¶ 8-11.)

On February 20, 2012, in Plaintiffs' Responses To Defendants' First Set Of Interrogatories, when asked to explain why Keenan had not filed an appeal, Keenan stated that "plaintiffs took advantage of every reasonable procedural avenue they knew of or which existed. . . .[T]hey [the appeals] were unavailing and fruitless remedies."  (Pls.' Resps. To Defs.' First Set Of Interrogs. (ECF No. 66-28) at Page ID # 7502.)  In that same response, Keenan also indicated that "[a]ll appeals, furthermore, sent by the plaintiffs or members went unanswered."  (Id. at Page ID # 7503.)  Keenan did not produce any documents related to the filing of an appeal.[1]  Defendants contend that Keenan's response to the interrogatory was consistent with their understanding that Keenan had not filed an appeal.

On April 5, 2012, at his deposition for this case, Keenan explicitly stated that he filed an appeal from his Article L convictions to the Executive Committee.  (Apr. 5, 2012 Keenan Dep. (ECF No. 65-22) at Page ID # 5984-86.)  Keenan asserts that he did not receive a response to his appeal.  (Id. at Page ID # 5984)  Defendants claim that Keenan's deposition was the first time that they learned of Keenan's appeal.  Following Keenan's deposition in this matter, Defendants

---

[1]  Prior to Keenan's deposition in this case, on April 3, 2012, Keenan's attorney stated: "I am not aware of the existence of any documents responsive to defendants' request for production of documents that has not already been given to you, or which was not given to me by your side in the first place."  (Apr. 3, 2012 Ltr. from Rosenblatt to Rajendra (ECF No. 70-4) at Page ID # 7978.)

contend that they received varied and changing responses as to why no documents were produced regarding the appeal and also as to how the appeal was filed.[2]

Keenan maintains that he prepared an appeal from his Article L convictions on his home computer and thereafter saved the files to that computer. (June 13, 2012 Aff. of Michael A. Keenan (ECF No. 66-29) ("Keenan Aff.") ¶ 16.) Keenan asserts that on or about August 28, 2009, he printed the appeal and mailed it to the IAM Executive Council. (Id. ¶¶ 11, 15-16.) Keenan indicates that he did not receive a response or confirmation from the IAM Executive Council, but that the lack of response was not unusual in his opinion. (Id. ¶ 18.) Keenan states that "[g]iven that I had been President of Local S6 since 2002, I was well aware of the importance of not skipping a step in the appellate process." (Id. ¶ 15.)

Further, Keenan maintains that both Michael Cyr and Troy Osgood witnessed and assisted him in preparing the appeal. (Id. ¶ 17.) Troy Osgood and Michael Cyr have both stated in their affidavits that they assisted Keenan in preparing the appeal. (June 13, 2012 Aff. of Troy Osgood (ECF No. 73-1) ¶¶ 5-6; June 13, 2012 Aff. of Michael Cyr (ECF No. 73-2) ¶¶ 5-6.)

---

[2] On April 13, 2012, Keenan's attorney stated: "It was and is my understanding that Mr. Keenan did file an appeal to the International following the panel's decision on the Article L charges. I recall talking with Mr. Keenan about it. I am given to understand that Mr. Osgood recalls reading the document because it was filed on behalf of Keenan, Osgood, and Cyr." (Apr. 13, 2012 Ltr. from Rosenblatt to Rajendra (ECF No. 70-5) at Page ID # 7981.) In the same letter, attorney Rosenblatt indicated that "the hard drive in [Keenan's] computer crashed and was thrown out." (Id.) On May 8, 2012, attorney Rosenblatt responded to document requests by stating:

> With regard to Mr. Keenan's appeal of the Article L findings, Mr. Keenan represents that he wrote that appeal on his prior computer and sent it to the International through the Microsoft Explorer program resident on his computer. Mr. Keenan's hard drive later crashed and he had not taken steps to preserve the appeal in hard copy. Mr. Keenan threw out the hard drive, and it cannot be located at this time. Mr. Keenan did discuss the appeal with others at the time, and the undersigned is given to believe at least one recalls the discussion.

(Pls.' Compliance With Court's Apr. 25, 2012 Order Regarding Defs.' Req. For Produc. (ECF No. 70-6) at Page ID # 7985.) Defendants contend that had Keenan sent the appeal via electronic mail, the email provider would have retained a copy, which could have been found and furnished by Keenan. Then in May, Keenan's attorney suggested that the appeal may have been sent via the U.S. Postal Service. (May 16, 2012 Ltr. from Rosenblatt to Rajendra (ECF No. 70-8) at Page ID # 7998.)

After writing the appeal, Keenan states that he did attempt to preserve the written appeal on his home desktop computer. (Keenan Aff. ¶ 20.) His computer contained not only the written appeal but also "important, and precious, family files." (Id. ¶ 22.) Keenan asserts that at the time, he did not know that he should have backed up the information on his desktop computer. (Id. ¶ 23.) Then, "[i]n or around June 2010, [Keenan's] desktop computer stopped functioning. In a word, it 'crashed.' The screen went blue and [he] was unable to retrieve any of the documents contained on the hard drive." (Id. ¶ 25.) As a result of the "crash," Keenan believed that all information on the computer, including the appeal and his personal files, were irretrievably lost. (Id. ¶ 26.) Keenan claims that he was not aware that there may have been a way to retrieve information off of the crashed computer. (Id.) Had he known that the information could have been retrieved, he claims he would have attempted to do so. (Id.) Instead, Keenan says that he placed the computer in the trash, and it was taken away in June 2010. (Id.)

Keenan asserts that at the time his computer crashed, June 2010, the present lawsuit had not yet been filed. (Id. ¶ 27.) Moreover, he did not "have a reasonable expectation that the current lawsuit would commence, given that [he] had one last opportunity to appeal the decision internally." (Id.) However, Defendants point to a statement by Keenan's attorney that appeared in a Daily Labor Report on August 14, 2009 to show that Keenan was aware of the possibility of litigation, wherein Keenan's attorney stated that "he plans to file suit charging the international with due process violations." (Aug. 14, 2009 Daily Labor Report (ECF No. 70-1) at Page ID # 7964.)

4

## II. DISCUSSION

Through Defendants' Motion For Sanctions, Defendants ask the Court to sanction Keenan for his alleged spoliation of evidence, specifically, Keenan's alleged failure to preserve his written appeal to the IAM Executive Council for the discipline imposed upon him as a result of the Article L Hearings. As a sanction, Defendants request that "Keenan's unsubstantiated assertion that he in fact prepared and filed such an appeal – which is contrary to all other evidence in the record – should be excluded from consideration both at summary judgment and at trial." (Defendants' Motion at 1.)

This Court has previously stated that:

> The goals of the spoliation doctrine are to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to such loss of evidence. Sanctions for spoliation may include dismissal of the case, the exclusion of evidence, or a jury instruction on the spoliation inference. The First Circuit considers the prejudice to the non-offending party and the degree of fault of the offending party. Of these, the First Circuit has implied that it weighs prejudice more heavily than bad faith.

Driggin v. American Sec. Alarm Co., 141 F. Supp. 2d 113, 120 (D. Me. 2000) (internal citations, quotations and footnotes omitted).

Bad faith is not required prior to the imposition of sanctions. Trull v. Volkswagen of America, Inc., 187 F.3d 88, 95 (1st Cir. 1999) (stating that "our case law does not require bad faith or comparable bad motive" to impose sanctions for spoliation). Indeed, "[b]ad faith is not essential. If such evidence is mishandled through carelessness, and the other side is prejudiced, we think that the district court is entitled to consider imposing sanctions, including exclusion of the evidence. Although deterrence may play a role, the primary aim is remedial, at least absent willful destruction." Id. (citations omitted). While the Court must consider fairness to the opposing party, the Court is also aware that courts are reticent to dismiss a case as a sanction for

5

loss of evidence or to exclude evidence where that exclusion would practically amount to a dismissal. See, e.g., Small v. General Motors Corp., No. 05-131-P-H, 2006 WL 3332989 at *29 (D. Me. Nov. 15, 2006) (finding that defendants had failed to lay the appropriate foundation for the imposition of either exclusion of evidence or dismissal where the blade, fan and water pump that injured plaintiff were removed from the scene of the accident and lost, and no malicious intent was established) report and recommendation adopted 474 F. Supp. 2d 186 (D. Me. 2007); Elwell v. Conair, Inc., 145 F. Supp. 2d 79, 88 (D. Me. 2001) (stating that "the most severe sanction of dismissal should be reserved for cases where a party has maliciously destroyed relevant evidence with the sole purpose of precluding an adversary from examining that relevant evidence" (internal citations omitted).)

At the threshold, the Court notes that there is no indication in this case of bad faith or malicious intent by or on Keenan's behalf. Rather, the evidence before the Court shows that the loss of the written appeal by Keenan was an accident. Further, "Keenan admits that the disposal of the computer was an error due to his own ignorance." (Pl.'s Objection To The Defs.' Mot. For Sanctions (ECF No. 73) at 7.) In addition, the Court does not find any malicious intent in Keenan or his attorney's discrepancies regarding the production of documents related to the appeal or the means by which the appeal was filed.

Defendants assert that the severe sanction of exclusion of evidence is appropriate here because the evidence is central to their argument that Keenan failed to exhaust his administrative remedies and allowing Keenan to testify that he filed an appeal severely prejudices Defendants. First, it is not the case that "the face of all available evidence [shows] that he never filed any such appeal." (Defendants' Motion at 9.) Instead, Keenan presents his own testimony that he prepared and filed an appeal and the testimony of two individuals who stated that they assisted in

6

the preparation of the appeal. (See Keenan Aff. ¶ 16; Osgood Aff. ¶¶ 5-6; Cyr Aff. ¶¶ 5-6.) Relatedly, Defendants have presented evidence to show that no appeal was ever received by Defendants and that had an appeal been received, the Defendants would have a record of the appeal. (Shemanski Decl. ¶¶ 8-11.) Thus, at this point, there is conflicting evidence on the record as to whether an appeal was filed by Keenan. Second, Defendants essentially argue that allowing Keenan to testify that he filed an appeal, amounts to permitting Keenan to benefit from his falsehood. (See, e.g., Defendants' Motion at 8 n.4.) The Court disagrees with the premise and the conclusion. As previously stated, at this point in the litigation, it is not clear whether Keenan filed an appeal. Accordingly, any insinuation or assertion that Keenan is benefiting from a lie is mere speculation.

Turning to the issue of prejudice, Defendants claim severe prejudice if the evidence in question is not excluded. Undoubtedly, the fact that there is no copy of the appeal turns what would otherwise be an objectively verifiable fact into a question for the finder of fact. Defendants, however, are not left without any means to counter the prejudice. On the record before the Court, Defendants have presented evidence to show that: (1) no appeal, or other written correspondence, was received by Defendants from Keenan after August 6, 2009; (2) the practice of Defendants was to make and retain any files associated with an appeal; and (3) an appeal was received from another individual tried at the Article L hearings, which was promptly resolved. (See Shemanski Decl. ¶¶ 5-11.) In addition, were this case to proceed to trial, Defendants would be fully able to explore any issues regarding the truthfulness of Keenan's assertions on cross-examination. Further, the Court notes that when Defendants first allegedly learned of the appeal at the April 5, 2012 deposition of Keenan, Defendants failed to pursue further information regarding the appeal. (See Apr. 5, 2012 Keenan Dep. at Page ID # 5984-

5988.) Defendants restricted their questioning as to whether Keenan had filed an appeal and how his answer aligned with his previous discovery. (See id. at Page ID # 5984-94.)

In short, the Court finds that Keenan may have been, at worst, negligent in disposing of his computer without taking steps to ascertain if the information on it could be retrieved. However, given the lack of bad faith and the other evidence available to the parties, the Court, in its discretion, does not believe the extreme sanction of exclusion of the evidence is warranted in this case. Accordingly, Defendants' Motion For Sanctions (ECF No. 71) is DENIED WITHOUT PREJUDICE.[3]

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 28th day of March, 2013.

---

[3] In Small, the Court stated:

> It is important to note, however, that my findings with respect to sanctions for spoliation are preliminary. I merely conclude that on the facts presented at this stage in the proceeding the relatively severe sanctions that Goodale has requested are not warranted. I do not rule out the possibility that these or other sanctions-such as a negative inference jury instruction or more targeted exclusion of certain aspects of [plaintiffs' expert's] testimony-may be appropriate at a later stage.

Small, No. 05-131-P-H, 2006 WL 3332989 at *31 (citing Driggin v. Am. Sec. Alarm Co., 141 F. Supp. 2d 113, 123 (D. Me. 2000).) The Court likewise finds that at this point in the proceedings, the severe sanction of exclusion is not appropriate.