## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

MICHAEL A. KEENAN,         )
                           )
        Plaintiff,         )
v.                         )
                           )     Case No. 2:10-cv-377-GZS
INTERNATIONAL ASSOCIATION OF  )
MACHINSTS AND AEROSPACE     )
WORKERS, et al.             )
                           )
        Defendants.     )

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant International Association of Machinists and Aerospace Workers, Defendant R. Thomas Buffenbarger and Defendant Lynn D. Tucker, Jr.'s (collectively "Defendants") Motion For Summary Judgment (ECF No. 69).  For the reasons explained herein, the Court GRANTS Defendants' Motion For Summary Judgment (ECF No. 69).[1]

## I.    LEGAL STANDARD

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  A "material fact" is one that has "the potential to affect the outcome of the suit under the

---

[1]  In accordance with District of Maine Local Rule 7(f), the Court has determined that this matter can be decided without oral argument, and thus DENIES the Joint Motion For Oral Argument (ECF No. 84).

applicable law." Nereida–Gonzalez v. Tirado–Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson, 477 U.S. at 248) (additional citation omitted).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). "Mere allegations, or conjecture unsupported in the record, are insufficient." Barros-Villahermosa v. United States, 642 F.3d 56, 58 (1st Cir. 2011) (quoting Rivera–Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)); see also Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation.") (citations omitted). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (quoting In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993)).

## II.     BACKGROUND

### A.     The Union, the Local Lodge And Plaintiff Keenan

Defendant the International Association of Machinists and Aerospace Workers ("IAM" or the "Union"), also known as the Grand Lodge, is an international labor organization that represents approximately 730,000 workers in the United States and Canada.  The International President of the IAM is Defendant R. Thomas Buffenbarger.  The Grand Lodge is organized into geographic territories, and the IAM General Vice President for the Eastern Territory is Defendant Lynn D. Tucker.  The IAM workers are represented through local unions called Local Lodges, which are in turn organized into District Lodges.  Local Lodge S/6 ("LL S6" or the "Local") is an IAM Local Lodge in Bath, Maine that represents approximately 3,400 workers at Bath Iron Works.

Plaintiff Michael A. Keenan was a member of LL S6 and was elected president of LL S6 in 2001.  He was reelected in 2004, 2007 and on February 12, 2008.  Keenan's last full day as an officer of LL S6 was March 16, 2008, the day before trusteeship was imposed on the Local.

### B.     The Imposition Of Trusteeship

While on assignment to investigate complaints received from members of LL S6 about the conduct of the Local's October 2007 election of officers, Grand Lodge Representative Paul Shemanski learned about multiple problems in the administration of the Local.  Following further investigation, Buffenbarger exercised his authority under the IAM Constitution to place LL S6 in trusteeship.  Buffenbarger appointed Grand Lodge Representative William Rudis as LL S6's temporary trustee on March 17, 2008.

In April 2008, a three-member committee conducted a three-day, eight witness, 150-exhibit hearing to determine whether to continue the trusteeship, during which Rudis presented

the case in favor of continuation of the trusteeship and Keenan the case against it.  On July 28, 2008, the panel concluded that the trusteeship should be continued, and Buffenbarger accepted that decision on August 12, 2008.  Upon imposition of the trusteeship, Defendants maintain that the IAM Constitution required Rudis, as temporary trustee, to either appoint Keenan as his deputy to assist in operating the Local during the trusteeship or to serve him with charges under the Constitution's disciplinary provisions.[2]  (See IAM Constitution, dated Jan. 1, 2005 (ECF No. 62-26) ("IAM Const.") at Page ID # 3527-28.)  According to Keenan, Rudis deputized the Secretary-Treasurer of the Local, John Portela, and concurrently charged Portela with wrong-doing under Article L.  (Aff. of Michael A. Keenan (ECF No. 79-1) ¶¶ 29-32.)  However, Rudis declined to appoint Keenan as his deputy because he concluded that Keenan's managerial failures were a substantial cause for the dysfunction that led to the trusteeship.

### C.      Prior Lawsuits

On May 12, 2008, Keenan brought suit in this Court challenging the imposition of the trusteeship on the ground that it had been imposed for an unlawful purpose.  See Keenan v. Int'l Assoc. of Machinists, No. 2:08-cv-00147, Complaint (ECF No. 1) ("Keenan I").  This Court granted summary judgment in favor of Defendants on the Labor Management Reporting and Disclosure Act claims and declined to exercise jurisdiction over the state law claims.  See Keenan v. Int'l Assoc. of Machinists, 632 F. Supp. 2d 63 (D. Me. 2009).  In March of 2009, Keenan filed suit in Maine state court asserting claims for libel per se, defamation and false light

---

[2]  The IAM Constitution provides:

> Whenever the I.P. determines that any of the circumstances described in Sec. 8 exist, he/she may appoint a temporary Trustee to take charge and control over the affairs of such subordinate body. All officers and representatives shall be suspended without pay pending their appointment by the temporary Trustee to serve as Deputy Assistants.  In the event that an officer or elected representative is not so appointed, he/she shall be served with specific charges and all procedural protection provided by Art. L.

(IAM Constitution, dated Jan. 1, 2005 (ECF No. 62-26) at Page ID # 3527-28.)

invasion of privacy related to the dissemination of three letters by Defendants to the members of the Local and the public at large in April and May of 2008.  See Keenan v. Int'l Assoc. of Machinists, No. BCD-CV-10-42, 2012 WL 1521477 (Super. Ct. Me. Feb. 23, 2012) ("Keenan II").  In that case, the state court granted summary judgment for Defendants on the grounds that plaintiffs "failed to make a *prima facie* showing either that the alleged defamatory statements were 'of and concerning' the individual Plaintiffs, or that Defendants acted with actual malice." Id.

As part of discovery in Keenan I, Keenan's attorney deposed Tucker on January 26, 2009, Buffenbarger on January 27, 2009, Paul Shemanski on February 2, 2009, Tony Provost on February 3, 2009, Glen Burroughs and David Sullivan on February 4, 2009, and Rudis on February 5, 2009.  On or before February 4, 2009, Keenan also received over 7,500 pages of documents from Defendants in Keenan I.

### D.   Article L of the IAM Constitution

The IAM's 2005 Constitution, Article L, sets forth the Union's penal code for disciplinary actions against officers and members.[3]  Section 2 states that union officer can be charged with "[i]ncompetence, negligence, or insubordination in the performance of official duties; or failure or refusal to perform duties validly assigned."  (IAM Const. at Page ID # 3640.) With regard to disciplinary hearings, under Article 4, the International President can determine that in fairness to the accused and in the best interests of the Union, charges will be tried before a

---

[3]  In addition, the IAM's Official Circular No. 828 "sets forth the procedures to be followed in connection with filing charges, conducting trials, and submitting appeals.  Whenever charges are filed under Article L, CODE, of the IAM Constitution there must be strict adherence to the specific provisions of the Constitution as well as the procedures outlined below."  (IAM Official Circular No. 828 (ECF No. 66-30) at Page ID # 7524.)  As discussed below, because a violation of internal union documents constitutes a violation of the Labor Management Reporting and Disclosure Act only where "it deprives the Union member of the 'full and fair hearing' contemplated by § 101(a)(5) of the [LMRDA]," the Court need not and will not further discuss the Official Circular 828.  See Gillen v. Int'l Bhd. of Teamsters, 341 Fed. App'x 728, 729-30 (2nd Cir. 2009); see also Yager v. Carey, 910 F. Supp. 704, 713 (D.D.C. 1995).

special trial committee.  If a special trial committee is not appointed and if the charges are not heard before the Grand Lodge Convention, the charges against a local president are tried before the president's local lodge, the District Lodge or the conference of which the accused is an officer.  Following the appointment of the special trial committee, the IAM Constitution indicates that a preliminary investigation should be conducted to determine whether or not there is "sufficient substance to warrant a formal trial being held."  (Id. at Page ID # 3642-43.)  If the trial is warranted, the accused is to be notified of the specific charges that will be tried.

### E.     The Filing Of Charges Against Keenan

On September 19, 2008, Rudis filed fifteen charges against Keenan under Article L of the IAM Constitution related to Keenan's mismanagement of the Local.  (Sept. 19, 2008 Ltr. from Buffenbarger to Keenan (ECF No. 62-19) at Page ID # 3465-66.)  In that charging document, there are no dates or times specific to Keenan's misconduct.  Keenan asserts that each of the charges against him was associated with duties assigned to other officers of the Local, and none of those fifteen charges was part of Keenan's official duties as local president under the IAM Constitution.[4]  Rudis also brought charges against eight other LL S6 members, including many of the Local's former officers.  Keenan maintains that those Local officers who were Keenan's adversaries remained in office during the trusteeship while Keenan's allies were charged.

On September 29, 2008, Buffenbarger sent Keenan a copy of the charges against him. By the same letter, Buffenbarger appointed a three-member Special Trial Committee ("STC") to hear the charges filed by Rudis.  In the letter from Buffenbarger to Keenan, Buffenbarger

---

[4]  Under Article C of the IAM Constitution, the official duties of a local lodge president are:  the president shall (1) preside at all meetings of the local lodge; (2) decide all questions or disputes not controlled by laws of the IAM; (3) countersign orders and checks properly drawn on or by the secretary-treasurer; (4) appoint committees not otherwise provided for; (5) appoint an educator and a communicator; (6) administer the obligation to new members; (7) enforce the laws of the IAM applicable to local lodges and members; and (8) perform such other duties as may be required by this Constitution, and, in the case of a tie, shall cast the deciding vote.  (IAM Const. at Page ID # 3597.)

indicated that the reason for the hearing before the STC was that "the best interest of the IAM would be served by having these charges handled by a Special Trial Committee." (Sept. 29, 2008 Ltr. from Buffenbarger to Keenan (ECF No. 62-29) at Page ID # 3876.) The members of the STC were Roger Nauyalis, Grand Lodge Representative in Naperville, Illinois (chairperson), Tom Verdi, Business Representative at IAM Local Lodge 1363 in Cleveland, Ohio, and Tony Rippeto, Assisting Directing Business Representative at IAM District Lodge 9 in Bridgeton, Missouri. Buffenbarger asserted that he appointed those three individuals because of their objectivity, open-mindedness, and ability to make decisions after listening to multiple points of view, as well as their lack of prior involvement in any matters related to LL S6 and lack of bias. However, Keenan asserts that the three members of the STC, Nauyalis, Verdi and Rippeto, were IAM employees, reported up the chain of command to Buffenbarger, and were therefore beholden to Buffenbarger.

Prior to their appointment, none of the STC panelists knew Keenan or knew anything about the charges Rudis filed against him. They had no prior acquaintance or involvement with Keenan or LL S6. The STC panelists have stated that they made their decisions solely on the basis of the evidence presented in the hearing, and conferred amongst themselves to decide on Keenan's guilt and penalty. Nauyalis, as chairperson of the STC, had contact with IAM counsel periodically before and after the trial, and IAM Associate General Counsel William Haler drafted the opinion of the STC, under Nauyalis's guidance, reflecting the STC's opinions and conclusions.

### F.      Keenan's Requests For Documents And Information

On multiple occasions between early November 2008 and April 2009, Keenan requested information that he believed to be crucial in preparing for the preliminary hearing and the Article L hearing.  Keenan also requested that certain witnesses be required to attend.  Nauyalis, as head of the STC, responded to the requests by indicating either that Keenan was already in possession of much of the information requested as a result of the trusteeship hearing and discovery in <u>Keenan I</u> or that Keenan did not have a right to discovery.  Specifically, on April 21, 2009, Nauyalis informed Keenan that:

> [U]nder the IAM Constitution, Article L hearings, like trusteeship hearings, do not provide for formal litigation-like procedures, such as witnesses and document subpoenas.  To the extent that the Plaintiff produces witnesses against you, you will have the opportunity to cross-examine those witnesses.  To the extent that the Plaintiff produces documentary evidence, you will have the opportunity to review it and challenge it.  Of course, you may present in [sic] witnesses and documents you wish.

(Apr. 21, 2009 Ltr. from Nauyalis to Keenan (ECF No. 62-23) at Page ID # 3473.)

### G.      The Preliminary Hearing

The STC attempted to schedule a preliminary hearing with Keenan regarding the charges filed against him in early December 2008.   Keenan and his attorney requested that the preliminary hearing be postponed because of ongoing discovery in <u>Keenan I</u>.  Accordingly, the preliminary hearing was held on March 18, 2009 with Rudis and March 19, 2009 with Keenan.  During each of these two separate meetings, the STC either met with Rudis or Keenan, but not both.   When the STC met with Rudis, Rudis described the charges and indicated that he had evidence to support each of the charges.   Nauyalis stated that the STC did not examine documents brought by Rudis or Keenan, although Keenan did bring documents to the preliminary hearing.

The STC determined that there was sufficient substance to go forward with the Article L hearing.  The STC decided to move to a full hearing because Rudis and Keenan presented differences of opinion, and the STC "did not know who to believe."  (Apr. 9, 2012 Nauyalis Dep. (ECF No. 65-23) ("Nauyalis Dep.") at Page ID # 6085-86.)   Nauyalis stated that the STC "determined we could not decide who [was] telling the truth, and the only way to do that is to move forward with the trial. . . . Based on what we heard, we moved forward with the trial.  We could not determine who was telling the truth."  (Id. at Page ID # 6087-88.)

On April 20, 2009, Keenan wrote to the members of LL S6 about his upcoming hearing. Of the preliminary hearing on March 19, 2009, he wrote:

> I then went through the same charges that I did in the presence of 300 members a year earlier at the Topsham Fairgrounds.  I presented undisputed paperwork and testimony once again substantiating that these demeaning and fabricated charges should be immediately thrown out.  I explained that I have **never** sold label in my life, **never** handled money for the Local, **never** been to the bank for the local, was **not hooked** on the internet, **cannot write a check or a voucher** for the Lodge. However, everyone who does these tasks is still at the Local Lodge and a few were recently promoted.

> I reiterated that the IAM representative testified under oath at the trusteeship hearing and suddenly couldn't recall what was being asked 33 times when we were asking the questions.  I explained how the Grand Lodge Representative later testified to destroying notes and how other members of the IAM staff were in the union hall late at night by themselves a week prior to the election.  From briefs and transcripts to exhibits and testimony, this committee had all they needed to easily conclude that these charges should be immediately thrown out.

(Apr. 20, 2009 Ltr. from Keenan to LL S6 Membership (ECF No. 67-27) at Page ID # 7614 (emphasis in original).)  On April 26, 2009, Keenan complained that he had only learned what charges were moving forward from the preliminary hearing on April 7, 2009 and that for over a year the IAM representative had had access to all the information while Keenan had not.

### H.     The Article L Hearing

Between April 27 and May 12, 2009 and following the preliminary hearing, the STC conducted adversarial hearings on Rudis's charges against each of the nine charged LL S6 members.  When the STC began on April 27, 2009, Rudis made a general opening statement and Keenan pled not guilty to the charges alleged.  At that time, Nauyalis again informed Keenan that he was not entitled to all the information that he had requested previously because the IAM Constitution did not provide for discovery.  Keenan's adversarial hearing took place over nine sessions during five days in late April and early May 2009.  The transcript of the hearing is 1,671 pages long and the hearing took approximately forty hours.

Eighty-nine exhibits were introduced: six were joint exhibits, seven were STC exhibits, 38 exhibits were introduced by Rudis and 38 exhibits were introduced by Keenan.  Many exhibits introduced by Rudis at Keenan's Article L hearing were included with Defendants' document production in Keenan I, were in the trusteeship record, or were produced by the plaintiffs in Keenan I.  At one point during the hearing, Keenan objected that he needed time to review and prepare in response to a document that he had only been shown during the hearing. The STC responded that it was not unusual to see documents for the first time during the hearing. However, at another point in the hearing, the STC did sustain Keenan's objection to an exhibit that Rudis attempted to introduce and also sustained Keenan's objection to Rudis's attempt to adduce evidence regarding the IAM Machinists Non-Partisan Political League ("MNPL") Education Fund.

Twenty-eight witnesses were called: 16 by Rudis and 12 by Keenan.[5]  Keenan cross-examined every witness called by Rudis and was also able to re-cross examine every witness that

---

[5]   Keenan claims that it was only after Rudis called his first witness that he began to learn the substance of the charges against him.  However, many of the Article L charges that Rudis brought against Keenan closely tracked or

Rudis examined on re-direct.  On cross-examination, Keenan was not permitted to raise matters that had not been raised by Rudis in his direct examination.

Keenan could only call witnesses who appeared voluntarily.  For example, Keenan asked former president Rock Grenier to be a witness, but he refused.  In addition, Anthony Provost was called by Rudis to testify.  After Keenan finished his cross-examination of Provost, which was limited to the subject matter of Rudis's direct examination, Keenan indicated that he wanted to recall Provost to testify in Keenan's defense. Despite Keenan's request, Provost ignored Keenan and refused to return as a witness for Keenan.  Nauyalis stated that a trial committee had no role to play in assisting in the production of witnesses or documents:  "It is not [the STC's] responsibility as the trial committee to bring in witnesses.  Our process is very simple. [Defendants] can ask witnesses to appear voluntarily.  If they choose to, they do.  If they don't, they don't."  (Nauyalis Dep. at Page ID # 6149-50.)

## I.      The STC's Decision

STC chairperson Nauyalis testified that during a private telephone conference call, the STC reached its disposition on each of the 15 charges against Keenan.  Nauyalis then conveyed those dispositions and the STC's reasoning to a member of the IAM Legal Department, who served as the STC's law clerk in drafting its decision in accordance with Nauyalis's instructions. The draft was then edited by Nauyalis and reviewed by the other committee members before it was signed and submitted to Buffenbarger.

On July 30, 2009, the STC issued its written opinions regarding the charges against all nine LL S6 members.  The STC found Keenan guilty of nine of the fifteen charges.  The STC's

---

verbatim repeated, the charges that Rudis prosecuted and Keenan defended in the trusteeship ratification hearing in April 2008.  In a declaration under oath on May 11, 2008, Keenan described with specificity the substance and meaning of the trusteeship charges virtually identical to Rudis's third, fourth, fifth, seventh, tenth, eleventh and twelfth Article L charges.  (See May 11, 2008 Keenan Decl. (ECF No. 65-30) ¶¶ 43, 45, 46, 47, 49, 50-52 54.)

decision explained its reasoning and cited evidence in support of its conclusions.   In the

"Summary and Recommended Penalty" portion of its written opinion, the STC concluded that:

> [T]he overall picture created by the evidence in this case is of a local lodge so
> poorly managed and lacking in basic procedural safeguards that its ability to carry
> out its basic business was impaired.  As Local President and business manager, it
> was Brother Keenan's responsibility to make sure that the Local Lodge
> functioned in an effective manner.  He failed to do so. . . .  [It] recommend[ed]
> that Brother Keenan not be returned to office as Local President and that he
> further be disqualified from holding any office with the Local Lodge or any other
> IAM affiliate for a period of four years.

(July 30, 2009 Ltr. from the STC to Buffenbarger (ECF No. 67-34) at Page ID # 7673.)

As required by the IAM Constitution, Buffenbarger reviewed the STC's report and its

recommendation for all nine charged LL S6 members.  On August 6, 2009, Buffenbarger issued

rulings accepting all of the STC's decisions and recommendations.  By letter dated August 6,

2009, he notified Rudis and Keenan of his decision.

According to the STC and Buffenbarger, the discipline imposed on Keenan was based

only on his convictions, and neither the STC nor Buffenbarger imposed any discipline on

Keenan for the six charges on which Keenan was not convicted.   Neither the STC nor

Buffenbarger made any decision or took any action on the basis of whether Keenan or LL S6 had

made or refused to make contributions to the MNPL Education Fund.  Although local lodges are

urged to make annual contributions of $1 per member to the MNPL Education Fund, such

contributions are voluntary, dozens do not do so, and none of them except LL S6 have been

placed into trusteeship.  Keenan, however, contends that IAM representatives were not happy

with him because MNPL money was not being paid.

Keenan was unable to point to any evidence that the members of the STC based their

decision on the MNPL issue or any of his other activities in opposition to the IAM – other than

the fact that they were aware of these issues because he himself had raised them during the

Article L hearing.  Keenan testified that other than the fact that the STC was aware of the issue, he has no evidence that the STC took any of his exercises of his free-speech rights – whether with respect to the MNPL, or to protest alleged improprieties in the way Anthony Provost paid local lodge representatives, or otherwise – into account or that the STC would not have convicted him of any charges but for these exercises of free speech.  Buffenbarger and each member of the STC have stated that they did not harbor any bias against Keenan.

### J.      Keenan's Appeal

The IAM Constitution required Keenan to exhaust his internal-appeal remedies before bringing a lawsuit challenging the IAM's imposition of discipline on him.  Specifically, the IAM Constitution provides for an appeal to the IAM Executive Council ("E.C.") from I.P. Buffenbarger's order affirming the decision of the STC.  The IAM Constitution required that any appeal be filed in writing with the IAM General Secretary-Treasurer ("GST") within thirty days of Buffenbarger's August 6, 2009 acceptance of the STC's decision.  The IAM Constitution requires recusal of any member of the E.C. who was "involved in the case or who has participated in the matter at earlier stages."  (IAM Constitution dated Jan. 1, 2009 (ECF No. 62-28) at Page ID # 3851.)  Accordingly, Tucker and Buffenbarger would not have sat on the E.C. when it considered any appeal by Keenan.  Under the IAM Constitution, the E.C. had full authority on appeal to vacate the discipline imposed on Keenan by Buffenbarger and the STC. Keenan asserts that on or about August 28, 2009, he did in fact prepare and file an appeal.  (See June 13, 2012 Michael A. Keenan Aff. (ECF No. 66-29) ¶¶ 14-18.)

### K.      The Current Litigation:  Keenan III

On September 7, 2010, Keenan filed his Complaint asserting a single cause of action for violation of Title I of the Labor Management Reporting and Disclosure Act, 29 U.S.C. §

411(a)(5) ("LMRDA") ("Keenan III"). Specifically, Plaintiff alleges that Defendants deprived him of his rights under the LMRDA, including his rights to freedom of speech and association, the right to take a legal action to challenge the denial of his rights protected by the LMRDA, his right to protection from improper discipline and from discipline imposed without due process, and his right and privilege to participate in elections and in the union's business. (See Complaint ¶ 48.) Keenan further alleges in the same Count that Defendants retaliated against him for exercising his protected rights in violation of the LMRDA. (See id. ¶ 49.)

On August 29, 2012, Defendants filed their motion for summary judgment. Defendants assert that they are entitled to summary judgment for three reasons: (1) Keenan failed to exhaust his internal union remedies; (2) the final judgment against Keenan in Keenan II bars his claims in this case under the doctrine of claim preclusion; and (3) the record evidence is insufficient to support a reasonable jury verdict on his claim for retaliation for exercising his first amendment rights and for his claim that he was denied due process. (Defs.' Mot. For Summary J. (ECF No. 69) ("Defendants' Motion") at 2-3.)

## III.   DISCUSSION

### A.   Exhaustion Of Internal Remedies

Defendants assert that Keenan's claims under the LMRDA should be dismissed because he failed to exhaust internal union remedies prior to filing this suit. As authorized by the LMRDA, see 29 U.S.C. § 411(a)(4), the IAM Constitution required Keenan to "exhaust[] all remedies by appeal or otherwise provided in [the IAM] Constitution" prior to resorting to any lawsuit. (IAM Const. at Page ID # 3654.) The First Circuit has stated that "the exhaustion requirement is critically important[] for it helps to guarantee union self-government and independence." Achilli v. John J. Nissen Baking Co., 989 F.2d 561, 564 (1st Cir. 1993).

The IAM Constitution provided for an appeal of Buffenbarger's acceptance of Keenan's guilty verdict and penalty to the union's Executive Council. (IAM Const. at Page ID # 3651.) Under the IAM Constitution, the appeal had to be filed in writing within thirty days of Buffenbarger's acceptance and sent to the GST. (Id.) Defendants have presented evidence that the GST did not receive a written appeal from Keenan or any written correspondence from Keenan after August 6, 2009. (Aug. 28, 2012 Shemanski Declaration (ECF No. 70-15) ¶¶ 8-11.) Defendants further maintain that Keenan never filed an appeal.[6] However, Keenan has presented evidence that he did prepare and file an appeal from his Article L convictions. (See Apr. 5, 2012 Keenan Dep. (ECF No. 65-22) at Page ID # 5984-5986; June 13, 2012 Aff. of Michael A. Keenan ¶¶ 11, 15-16; June 13, 2012 Aff. of Troy Osgood (ECF No. 73-1) ¶¶ 5-6; June 13, 2012 Aff. of Michael Cyr (ECF No. 73-2) ¶¶ 5-6.) Keenan further maintains that he never received a response from Defendants regarding his appeal, and that the only documentary evidence he had of his appeal was lost when his computer crashed in June 2010. The Court finds that there is a genuine issue of material fact as to whether Keenan filed his appeal, and correspondingly, whether Keenan exhausted the internal union remedies prior to filing suit. Therefore, Defendants' argument that Keenan failed to exhaust the internal union remedies is not amenable to summary judgment. The Court DENIES summary judgment on this basis.

### B.    Claim Preclusion

Defendants assert that the final judgment entered in Keenan II precludes Keenan's claims in this case under the doctrine of claim preclusion. The doctrine of claim preclusion prevents relitigation of claims or causes of action previously decided. State law determines the claim-preclusive effect in federal court of the final decision in Keenan II. See Giragosian v. Ryan, 547

---

[6]  For a more detailed discussion regarding the factual issue surrounding whether Keenan filed an appeal and Defendants' motion for sanctions, see the Court's Order On Motion For Sanctions.

F.3d 59, 63 (1st Cir. 2008).  Pursuant to Maine law, claim preclusion bars a subsequent lawsuit if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action.  See Portland Water Dist. v. Town of Standish, 940 A.2d 1097, 1099-1100 (Me. 2008) (citation and internal punctuation omitted). Defendants and Keenan agree that the first two criteria are satisfied here.  They disagree as to the third criterion: whether the causes of action in the two lawsuits are sufficiently identical.

Maine courts apply a transactional test to determine the identity of multiple causes of action.  See Thibeault v. Brackett, 938 A.2d 27, 30 (Me. 2007).  Specifically, courts examine "the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if [the causes of action] were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong."  Portland Water Dist., 940 A.2d at 1100 (citation and internal punctuation omitted). They also consider whether the operative facts "are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  Beegan v. Schmidt, 451 A.2d 642, 645 (Me. 1982) (quoting Restatement (Second) of Judgments § 24(2)).

Defendants argue that this case, Keenan III, is precluded because it is based upon the same "nucleus of operative facts" as Keenan II, and because similar proof was required for both cases, it would have been more efficient to try this case with the prior lawsuit.  Defendants argue that this case and Keenan II are based upon the same transaction and basic wrong:  "a re-run of the LL S/6 election, imposition of a trusteeship, and the prosecution of disciplinary charges under Article L – to remove Keenan and his associates from office and install persons more to

the IAM's liking in the leadership positions of LL S/6." (Defendants' Motion at 6-7.) Defendants further point to the similarity of complaints, noting that many of the allegations in this case are not only similar to the allegations in <u>Keenan II</u> but are verbatim repetitions of the earlier complaint.

However, as the Supreme Court instructed long ago: "That both suits involved 'essentially the same course of wrongful conduct' is not decisive. Such a course of conduct -- for example, an abatable nuisance -- may frequently give rise to more than a single cause of action." <u>Lawlor v. Nat'l Screen Serv. Corp.</u>, 349 U.S. 322, 327-28 (1955). Here undeniably, the two complaints and lawsuits overlap. Yet, in framing the transaction and "nucleus of operative facts" Defendants cast their net too widely. The background to both <u>Keenan II</u> and <u>Keenan III</u> is the same: a re-run election, trusteeship and disciplinary charges against Keenan and others. Yet that is where the similarities end. The operative facts in <u>Keenan II</u> centered on the dissemination of three allegedly defamatory letters by Defendants to the members of the Local and the public at large, resulting in slander, defamation and false light to Keenan, Troy Osgood, Michael Cyr and Cathy London in violation of Maine tort law. (<u>See</u> Pls.' Compl. For Slander, Defamation And False Light (ECF No. 66-18) at Page ID # 7248-50.)[7] In <u>Keenan II</u>, the Article L hearings were merely part of the backdrop of the case, referenced without detail or mention of any procedural due process violations under the LMRDA or claims of retaliation. (<u>See id.</u> ¶¶ 44-45.) In contrast, the nucleus of operative facts in <u>Keenan III</u> is not the dissemination of purportedly defamatory letters in March and April of 2008 but instead shifts to the notification of charges against Keenan in September of 2008, the Article L hearings held in April and May of 2009, and the issuance of the STC decision in July and August of 2009. Indeed, while the background of

---

[7]  The Court notes that the Complaint For Slander, Defamation And False Light submitted to the Court (ECF No. 66-18) omitted page nine (9) of that Complaint. Despite this missing page, the Court was able to ascertain the operative facts for <u>Keenan II</u>.

both cases is the same, the retaliation and due process allegations under the LMRDA that are central to <u>Keenan III</u> are not material to the state tort allegations raised in <u>Keenan II</u>.  The basic wrong in each case, defamation in <u>Keenan II</u> and retaliation and due process violations in <u>Keenan III</u>, differ.

Defendants also assert that because of the factual overlap, it would have been more convenient to resolve the two cases within a single lawsuit.  The Court does not agree.  Again, while there is a similar backdrop of ancillary facts, the facts necessary to each of the causes of action and the redress sought are different.  For both cases, many factual witnesses would overlap, but for each case, the testimony would differ in subject matter and time period.

Finally, the Court notes that <u>Keenan II</u> was commenced on March 4, 2010.  (Pls.' Compl. For Slander, Defamation And False Light at Page ID # 7250.)  On August 6, 2009, Buffenbarger accepted the STC's decisions and recommendations finding Keenan guilty of nine of the fifteen charges alleged against him.  Under the IAM Constitution, Keenan had thirty days from Buffenbarger's acceptance of the STC decision to file a written appeal with the GST.  As previously stated, on summary judgment, there is a genuine issue of material fact as to whether Keenan in fact filed his appeal.  If Keenan did file his appeal as he asserts, the Court cannot say whether he would have received a decision on his appeal prior to the commencement of <u>Keenan II</u>.  Accordingly, "courts have long abided by the 'unremarkable principle' that 'claims arising subsequent to a prior action . . . are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same 'course of conduct.'"  <u>Darney v. Dragon Products Co., LLC</u>, 592 F. Supp. 2d 180, 184 (D. Me. 2009) (citing <u>Storey v. Cello Holdings, L.L.C.</u>, 347 F.3d 370, 383 (2nd Cir. 2003)).  Because the nucleus of operative facts in <u>Keenan III</u> centered around the filing of and decision on the charges against Keenan, including

resolution of any appeal, the Court cannot say that his claims of retaliation and due process violations under the LMRDA should have been filed when <u>Keenan II</u> was filed.  Therefore, for this reason and those previously stated, the Court finds that <u>Keenan III</u> is not barred by the doctrine of claim preclusion and the Court DENIES summary judgment on this basis.

### C. Retaliation Under The LMRDA

In Keenan's claim for retaliation under the LMRDA, 29 U.S.C. § 529, Keenan alleges that the charges filed against him and the STC's conviction of him for nine of those fifteen charges amounted to retaliation for his exercise of his First Amendment rights.  On the record before the Court, Keenan has proffered that he refused to pay in to the MNPL Education Fund on behalf of LL S6 while he was the Local President.  Keenan alleges that this refusal to pay in addition to his prior lawsuits caused the filing of the charges against him and his eventual conviction, all in violation of the LMRDA.

In order to show retaliation under the LMRDA, a plaintiff must establish: "(1) he engaged in protected expression, (2) he was subjected to an adverse action reasonably likely to deter future expression, and (3) that action was caused by the protected expression." <u>Marshall v. Local 701, Int'l Brotherhood of Electrical Workers</u>, 387 Fed. App'x 623, 627-28 (7th Cir. 2010) (finding plaintiff failed to show retaliation where he failed to show how reliance on the report of the investigator who examined the charges by a union official showed causation).  In moving for summary judgment on this claim, Defendants do not challenge that Keenan engaged in protected expression or that he was subjected to an adverse action.  (Defendants' Motion at 11.)  Rather, Defendants contend that Keenan has failed to raise a genuine issue of material fact that the sole cause of his charges and convictions was his speech regarding the MNPL Education Fund or the filing of his prior lawsuits.

In order to prevail on a claim for retaliation, Keenan must prove that retaliation was the "but-for" cause of the adverse actions.   See Serafinn v. Local 722, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 597 F.3d 908, 914-15 (7th Cir. 2010).  It is not enough for a plaintiff claiming retaliation to show that the protected activity was a "motivating factor" because "[a] mixed-motive theory of liability is never proper in a suit brought under the LMRDA."  Id. at 914.  Thus, Keenan must show that his exercise of his free speech rights was "not merely a motivating factor, but a necessary condition or a 'but-for' cause."  Id.

Despite extensive discovery and a lengthy record on summary judgment, Plaintiff has failed to raise a trialworthy issue on this 'but-for' causation prong.  Keenan asserts that he can show causation under both the direct and indirect methods.  Under the direct method, a plaintiff must provide either direct evidence of retaliation or "a convincing mosaic of circumstantial evidence" that shows that his protected expression was the cause for his adverse action.  Id. at 918.  Under the indirect method, a plaintiff needs to show "at least that he was treated differently from similarly situated union members who did not exercise their right to free speech."  Id.

Turning first to the direct method, Keenan asserts that "there is a 'convincing mosaic of circumstantial evidence' that [Rudis], the STC, and Buffenbarger all charged and convicted him pursuant to their hostility toward [him] on account of his speech."  (Pls.' Objection To Defs.' Mot. For Summary J. (ECF No. 77) ("Plaintiff's Objection") at 15.)  Specifically, Keenan points to two categories of evidence as his mosaic of circumstantial evidence.  First, Keenan claims that the involvement of IAM counsel, whom Keenan claims were agents of Buffenbarger, shows "that Buffenbarger had a retaliatory hand in the decision to convict Keenan."  (Id.)  The record on summary judgment does show that the chairman of the STC, Nauyalis, had contact with IAM counsel periodically throughout the preliminary investigation, Article L hearing and the decision

process.  Further, after the STC reached its decision, Nauyalis did reach out to IAM Associate General Counsel Haler for assistance in drafting the written decision.  That decision was drafted in accordance with Nauyalis and the STC's instructions and was reviewed by all members of the STC before being sent to Buffenbarger.  Contrary to Keenan's characterization, the record on summary judgment does not show that Nauyalis, the STC or IAM counsel were in some way beholden to Buffenbarger.  It is true that Nauyalis was a Grand Lodge employee and that the IAM counsel were also employed by the Union.  However, any suggestion of collusion between these groups beyond the basic fact of the same employer is mere speculation.

Similarly, Keenan alleges that the appointment of the STC by Buffenbarger is evidence of retaliation.  Under Article 4 of the IAM Constitution, the International President can determine that in fairness to the accused and in the best interests of the IAM, charges will be tried before a special trial committee.  (IAM Const. at Page ID # 3642.)  In the alternative, had the STC not been appointed, the charges could have been heard before the Grand Lodge Convention, LL S6 or the District Lodge.  Keenan claims that a hearing before the Local would have been fairer to him, thus showing that the appointment of the STC is part of the mosaic evidencing retaliation.

Keenan points to a letter from Buffenbarger to Keenan, wherein Buffenbarger indicated that the reason for the STC was that "the best interest of the IAM would be served by having these charges handled by a Special Trial Committee."  (Sept. 29, 2008 Ltr. from Buffenbarger to Keenan (ECF No. 62-29) at Page ID # 3876.)  Keenan asserts that this is evidence that it was not fair to Keenan to have his charges heard before the STC.  While Buffenbarger's letter did not explicitly reference fairness to the accused, Buffenbarger has indicated that his decision to appoint the STC did take into consideration the fairness to Keenan.  (See Aug. 28, 2012

Buffenbarger Decl. (ECF No. 70-10) at ¶ 9.)   Although Keenan claims that the STC was beholden to Buffenbarger, there is simply nothing in the record to substantiate that assertion.   In short, no reasonable fact-finder could conclude that the mere decision to appoint the STC amounted to an act of retaliation.

Moreover, viewing all of the evidence regarding the involvement of IAM counsel and the appointment of the STC in the light most favorable to Keenan does not establish that Keenan's exercise of his right to free speech was the 'but-for' cause of the charges or his convictions. Rather, Keenan's "convincing mosaic of circumstantial evidence" amounts to mere speculation and perceived procedural irregularities, neither of which creates a trialworthy link between the protected activity and adverse action.

Turning to the indirect method, Keenan must show "at least that he was treated differently from similarly situated union members who did not exercise their right to free speech." Serafinn, 597 F.3d at 918.  Here, Keenan points to the Secretary-Treasurer of LL S6, Portela, an alleged adversary of Keenan, and claims that although Portela was responsible for the Local's financial issues, Portela was nonetheless both charged and deputized, thus permitting Portela to continue to contribute to the Local.  Keenan has failed to show that Portela was similarly situated to Keenan with regard to their positions in the Local, responsibility for the charges or with regard to the overall outcome.  Instead, all that is shown here is that another officer of the Local was in fact charged but was also permitted to continue working for the Local. Given the ample record in this case and without more, the Court cannot say that Secretary-Treasurer Portela was a "similarly situated union member who did not exercise [his] right to free

speech."  See id.  Concluding that Keenan has failed to raise a trialworthy claim for retaliation

under the LMRDA, the Court GRANTS summary judgment to Defendants on this claim.[8]

### D.        Due Process Violations Under The LMRDA

Section 101(a)(5) of the LMRDA provides union members with a bill of rights before

discipline may be imposed.  See International Brotherhood of Boilermakers v. Hardeman, 401

U.S. 233, 244 (1971).  Accordingly, section 101(a)(5) provides that:

> No member of any labor organization may be fined, suspended, expelled, or
> otherwise disciplined except for nonpayment of dues by such organization or by
> any officer thereof unless such member has been (A) served with written specific
> charges; (B) given a reasonable time to prepare his defense; (C) afforded a full
> and fair hearing.

29 U.S.C. § 411(a)(5).  Keenan alleges that the process and discipline imposed on him by the

Union violated Section 101(a)(5) of the LMRDA by:  (1) failing to provide him with written

specific charges; (2) failing to afford Keenan enough time to prepare his defense; and (3) failing

to give Keenan a full and fair hearing by denying his right to call and recall witnesses, denying

him documents, and having a biased panel decide the case against him.

Before the Court turns to the arguments presented on the alleged due process violations,

the Court pauses to discuss a related argument repeatedly presented by Plaintiff.  Plaintiff asserts

that Defendants were required to follow the IAM Constitution and the supplementary penal code

found in Circular 828, and, by implication, that failure to follow either amounts to a due process

violation under the LMRDA.  (See Plaintiff's Objection at 3-4.)  Keenan cites Allen v. Int'l

Alliance of Theatrical, Stage Emp. & Moving Picture Mach. Operators of U.S. & Canada, AFL-

CIO, 338 F.2d 309 (5th Cir. 1964), for the proposition that "penal provisions in union

---

[8]    In addition, although the Court is reticent to wade into the internal affairs of the union, the Court notes ample
evidence to support the filing of charges and the conviction on nine of those fifteen charges.  See Local No. 48,
United Bhd. of Carpenters & Joiners of Am. v. United Bhd. of Carpenters & Joiners of Am., 920 F.2d 1047, 1051
(1st Cir. 1990) (providing that "[t]here is a well-established, soundly based policy of avoiding unnecessary judicial
intrusion into the affairs of labor unions.").

constitutions must be strictly construed" and that when a court reviews "whether discipline was properly imposed any ambiguity or uncertainty in the constitution must be construed against the union and in favor of the member." Id. at 316.  Keenan's argument, however, relies on a line of Fifth Circuit cases that predate the Supreme Court's International Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233 (1971), which disapproved of the line of cases cited by Keenan.  Id. at 242-43.  Instead, the standard is that a violation of an internal union constitution during the course of a disciplinary proceeding is a violation of the LMRDA "only if it deprives the Union member of the 'full and fair hearing' contemplated by § 101(a)(5) of the [LMRDA]." Gillen v. Int'l Bhd. of Teamsters, 341 Fed. App'x 728, 729-30 (2nd Cir. 2009); see also Yager v. Carey, 910 F. Supp. 704, 713 (D.D.C. 1995) (stating that in order for a violation of an internal union constitution to be actionable under the LMRDA, the Court "must find that the violation deprived plaintiffs of a fair trial within the meaning of the LMRDA.").  Accordingly, the Court reviews the alleged due process violations through this lens.

### 1. Written Specific Charges

Keenan contends that the charges against him in the September 19, 2008 letter fail to meet the standard of "written specific charges" under the LMRDA.  Under the LMRDA, charges against a union member must be "specific enough to inform the accused member of the offense that he has allegedly committed." Hardeman, 401 U.S. at 245.  The level of detail required necessarily depends on the circumstances of the case and will vary from case to case.  See Chao v. Local 1357, Int'l Bhd. of Electrical Workers, AFL-CIO, 232 F. Supp. 2d 1119, 1129 (D. Haw. 2002) (providing that "[h]ow detailed the factual statement must be depends on the circumstances"); Berg v. Watson, 417 F. Supp. 806, 810 (S.D.N.Y. 1976) (stating that "[t]he degree of specificity required to meet the statutory standard will vary from case to case").

Accordingly, the charges must contain sufficient detail "to notify the accused of the incidents that form the basis of the charge so that he or she may prepare a defense," but need "not . . . allege facts sufficient to support the charge or the particular elements of the charge." Johnson v. Nat'l Ass'n of Letter Carriers Branch 1100, 182 F.3d 1071, 1074-75 & n.5 (9th Cir. 1999). Indeed, the degree of specificity is not that needed for a criminal complaint. Id. at 1074; United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 19 F.3d 816, 823 (2nd Cir. 1994).

Thus, courts have found that union charges failed to meet the minimal statutory standard where the notice to the union member provided "little more than a mere statement of the nature of the charges." Berg, 417 F. Supp. at 811. In Berg, the notice to the union member stated that he was being charged under a particular section of the union's constitution because "he violated his oath of obligation on or about June 15, 1973 in that he refused to comply with an order given him by me in my capacity as a Business Agent of this Local Union." Id. at 810. The court held that while the charge did include a specific date, because two and a half years had passed between the incident at issue and the receipt of the notice, the union member received a high volume of orders, and that it would have taken little for the union to include key information in the charging document, the charges failed to meet the statutory standard. Id. at 811. In addition, in Johnson, the Ninth Circuit found that a charge failed to meet the statutory standard where there was an "absence of any statement of the facts" and the charge simply provided that:

> You have exceeded your authority and acted without and contrary to the authorizations of the Executive Council and the membership. You have continually subverted the will of the membership and publicly claimed that you do not recognize its authority in Branch meetings. You have attempted to turn other members against the Branch through lies, misrepresentation of the facts, and political campaigning on so-called "station visits." You have made politically motivated decisions affecting the Branch to its detriment in retribution against those with whom you disagree or perceive as political enemies.

25

Johnson, 182 F.3d at 1075.  Because the charge lacked any factual detail, the union member could do little more than prepare a general denial of misconduct in his defense.  Id.

Keenan argues that the charges levied against him are similar to those found insufficient in Berg, 417 F. Supp. 806 (S.D.N.Y. 1976) and Johnson, 182 F. 3d 1071 (9th Cir. 1999).  The September 19, 2008 letter charges Keenan with "incompetence, negligence, insubordination and failure to perform the duties, obligations, policies, and directives of the IAM in violation of Article L, Sections 2 and 3 of the IAM Constitution."  (Sept. 19, 2008 Ltr. from Buffenbarger to Keenan at Page ID # 3465.)  That letter then goes on to specify the fifteen ways in which Keenan engaged in the "incompetence, negligence, insubordination and failure to perform" his duties under the IAM Constitution.  (See id.)  Despite Keenan's argument, the Court is not convinced that the September 19, 2008 letter was fatally deficient.  While Keenan had a right under the LMRDA to be apprised of the charges levied against him, the amount of factual detail required of a charging document necessarily fluctuates based on the particulars of the case.  See Chao, 232 F. Supp. 2d at 1129; Berg, 417 F. Supp. at 810.  Here, Keenan was not charged with a discrete act that occurred at a particular time, date and place as was the union member in Berg. Instead, he was charged with, and the September 19, 2008 letter supports, an overarching, six-year pattern of incompetence in leadership that resulted in the Local being placed into trusteeship.  (See Sept. 19, 2008 Ltr. from Buffenbarger to Keenan at Page ID # 3465.)  Indeed, the STC upon finding Keenan guilty of nine of the charges stated that:  "[T]he overall picture created by the evidence in this case is of a local lodge so poorly managed and lacking in basic procedural safeguards that its ability to carry out its basic business was impaired."  (July 30, 2009 Ltr. from STC to Buffenbarger at Page ID # 7673.)  It is true that the charges contained in the September 19, 2008 letter do not contain specific dates, specific individuals or references to

specific documents.   Nonetheless, the Court finds that the charging letter provided sufficient detail given the nature of the charges brought against Keenan.

Keenan further claims that without specific factual detail, he "struggled with knowing exactly what he was being charged with even during trial."   (Plaintiff's Objection at 5.)   The Court finds Keenan's protestations of ignorance unavailing.   First, the charges alleged against Keenan were substantially similar to the complaints raised in the trusteeship hearing, which occurred prior to the issuance of the charges against Keenan.   (<u>Compare</u> March 17, 2008 Ltr. from Buffenbarger to the Local (ECF No. 58-3) <u>with</u> September 19, 2008 Ltr. from Buffenbarger to Keenan (ECF No. 62-19).)   At the trusteeship hearing, Keenan presented the case against trusteeship.   Moreover, after Keenan's preliminary hearing but before the Article L hearing, Keenan wrote to the members of the Local on April 20, 2009, stating that at the preliminary hearing he:

> [T]hen went through the same charges that I did in the presence of 300 members a year earlier at the Topsham Fairgrounds [for the trusteeship hearing]. . . . I explained that I have **never** sold label in my life, **never** handled money for the Local, **never** been to the bank for the local, was **not hooked** on the internet, **cannot write a check or a voucher** for the Lodge.

(Apr. 20, 2009 Ltr. from Keenan to LL S6 Membership at Page ID # 7614 (emphasis in original).)[9]   Similarly, in <u>O'Brien v. International Brotherhood of Electrical Workers</u>, 443 F. Supp. 1182 (N.D. Ga. 1977), the local union first held a hearing claiming that plaintiff had distributed literature detrimental to the union and then the national held a hearing after vacating the local's finding of guilt and discovering that the national, and not the local, had jurisdiction over the complaint.   <u>Id.</u> at 1184.   Plaintiff objected to the sufficiency of the charging document before the national union where that document did not include a copy of the specific literature

---

[9]  Keenan asserts that because the trusteeship charges were against the entire Local and many of the charges brought against him were also brought against other officers of the Local, he had no way of knowing which of his actions were in violation.  As previously stated, the Court finds Keenan's claims of ignorance unavailing.

that the union claimed was detrimental or point to the specific sections of that literature that were objectionable.  Id. at 1185.  The court disagreed, stating that "[t]he [national union] hearing was based upon the same charges as were considered at the [local] hearing held only a few months earlier.  Plaintiff had full notice from that hearing of which literature was involved."  Id. Likewise here, Keenan was apprised of the charges against him from the prior trusteeship hearing.

Second, before the charges were filed against Keenan, Keenan filed suit challenging the imposition of trusteeship.  The extensive discovery in that case extended past the time that the charges were filed against Keenan, allowing him and his attorneys to explore the basis for the charges against him in addition to the imposition of trusteeship.  For example, Keenan's attorney spent approximately one-third of Rudis's February 5, 2009 deposition questioning Rudis about the basis for the Article L charges.  Keenan testified that his attorney "could have asked [Rudis] anything he wanted to" about "the basis for the charges against [Keenan]."  (Apr. 5, 2012 Keenan Dep. at Page ID # 5856-57.)

Third, while the Court is aware that "[a]n ex post facto showing of knowledge by oral testimony cannot cure the lack of written statutory notice," Magelssen v. Local Union No. 518, Operative Plasterers' & Cement Masons' Int'l Assoc., 233 F. Supp. 459, 461 (W.D. Mo. 1964), that is not what happened in this case.  Instead, before the charges were filed against him, Keenan gained knowledge of the underlying basis of the wrongful conduct that would later form the basis for the charges against him via discovery in Keenan I and the trusteeship hearing.  By affirmatively seeking out that information, Keenan "thereby be[came] fully informed as to the nature and extent of the charges a reasonable time prior to the hearing, [and] the statute is satisfied, even though the original notice was defective or lacking."  Id.  Accordingly, even if the

notice provided Keenan was in some way deficient, his self-initiated steps in obtaining more information cured any arguable deficiency.

Finally, Keenan argues that the charging letter was insufficient because "[t]he IAM's rules simply do not permit Keenan to be charged as an officer with anything other than the official duties of a president."  (Plaintiff's Objection at 6.)  Contrary to Keenan's request to have this Court examine the propriety of the particular charges brought against him, the Court cannot undertake that inquiry.  As stated by the Supreme Court,

> [Section] 101(a)(5) was not intended to authorize courts to determine the scope of offense for which a union may discipline its members.  And if a union may discipline its members for offenses not proscribed by written rules at all, it is surely a futile exercise for a court to construe the written rules in order to determine whether particular conduct falls within or without their scope.

Hardeman, 401 U.S. at 244-45.  Accordingly, this Court will not examine whether any particular charge was properly brought against Keenan.  In short, Keenan has failed to raise a genuine issue of material fact on whether he was provided with written specific charges.

### 2.      Reasonable Time To Prepare Defense

Keenan next contends that he was not afforded "reasonable time to prepare his defense" in violation of 29 U.S.C. § 411(a)(5)(B).  The charging letter in this case was written on September 19, 2008, and there is no dispute that Keenan received that letter within a reasonable time thereafter.  After at least one request for an extension by Keenan and his attorneys, the Article L hearing began on April 27, 2009, more than seven months after the charging letter was written.  Seven months is more than an adequate and reasonable time period for Keenan to prepare his defense.  See, e.g., Wellman v. Int'l Union Of Operating Engineers, 812 F.2d 1204, 1206 (9th Cir. 1987) (finding twenty-eight days' notice of a disciplinary hearing sufficient); Meader v. Dist. Lodge No. 4, Indus. Union of Marine & Shipbuilding Workers of Am., 786 F.

Supp. 95, 105 (D. Me. 1992) (finding no violation of section 411(a)(5) of the LMRDA where the Union attempted service at least fourteen days before the hearing but Plaintiffs intentionally avoided receipt of the charging document); Null v. Carpenters Dist. Council of Houston, 239 F. Supp. 809, 815 (S.D. Tex. 1965) (finding that plaintiff had sufficient time to prepare his defense where plaintiff received written notice of the charges on March 26, 1962 and was tried on those charges on April 16, 1962).

Upon examination, it is clear that Keenan is actually complaining not about the time he was allotted to prepare his defense but instead about other procedural rights protected under section 411(a)(5). First, Keenan asserts that prior to the Article L hearing he requested and was promised additional details regarding the charges against him that he never received. (Plaintiff's Objection at 7-8.) To the extent that Keenan is challenging the charges brought against him, the Court has previously addressed this argument. To the extent that Keenan is asserting that he requested documents but did not receive them, the Court discusses that argument under the "full and fair hearing" discussion below. Next, Keenan argues that his right to "reasonable time to prepare his defense" was violated because he was denied documents that he requested, was presented with documents for the first time during the hearing, and was not permitted in the room while Prosecutor Rudis presented the case against him during the preliminary hearing. (Id.) This argument likewise goes to the merits of his right to a full and fair hearing under section 411(a)(5)(C). Therefore, the Court turns its attention to the full and fair hearing requirement.

### 3.      Full And Fair Hearing

Keenan alleges that he was denied his right to a "full and fair hearing" under section 411(a)(5)(C) of the LMRDA.[10]   The full and fair hearing provision protects the "procedural rights afforded to accused members under 'fundamental and traditional concepts of due process.'"   Yager v. Carey, 910 F. Supp. 704, 714 (D.D.C. 1995) (quoting Ritz v. O'Donnell, 566 F.2d 731, 735 (D.C. Cir. 1977)).   While union members are entitled to the fundamental elements of due process in a union disciplinary hearing, "the procedures of a union hearing need not be as rigorous as a federal court's procedures."   Id. (Internal citations and quotations omitted).   Here, Keenan alleges that his right to a full and fair hearing was violated by his inability to call and recall witnesses, that he was not provided with the documents that he believed to be necessary to his defense and that the tribunal against him was not impartial.

### a.      The Right To Call And Recall Witnesses

Keenan claims that his Article L hearing fell short of the requirement of a "full and fair hearing" under section 411(a)(5)(C) of the LMRDA because he was not permitted to call or recall witnesses.   The "full and fair hearing" requirement of the LMRDA mandates that union disciplinary procedures incorporate the "traditional concepts of due process."   United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 385 (2nd Cir. 2001) (quoting Kuebler v. Cleveland Lithographers & Photoengravers Union Local 24-P, 473 F.2d 359, 363-64 (6th Cir. 1973)) ("Teamsters").   However, "[n]ot all of the due process protections available in the federal courts apply to union disciplinary proceedings."   Id.

---

[10]   In Hardeman, the Supreme Court stated that the right to a "full and fair hearing" "requires the charging party to provide some evidence at the disciplinary hearing to support the charges made.   This is the proper standard of judicial review.   We have repeatedly held that conviction on charges unsupported by any evidence is a denial of due process."   401 U.S. at 246.   The Supreme Court then said that a stricter standard "would be inconsistent with the apparent congressional intent to allow unions to govern their own affairs, and would require courts to judge the credibility of witnesses on the basis of what would be at best a cold record."   Id.   Here, Keenan does not contest that the charges against him were supported by some evidence.   (See Plaintiff's Objection at 7-14.)

In Teamsters, the Second Circuit determined that disciplined union members' rights to a full and fair hearing were not denied where the union members claimed that they needed the district court to subpoena documents and witnesses on their behalf for their defense before a union disciplinary proceeding.  Id. 247 F.3d at 385-86.  In Teamsters, the union members were under investigation by both the U.S. Attorney's Office and an Independent Review Board, and so claimed that in light of the "awesome resources" possessed by those bodies, "it was necessary for the district court to issue subpoenas on their behalf in order to ensure that they receive a fair hearing."  Id. at 386.  In denying the union members' requests for subpoenas, the Second Circuit noted that neither of the governing documents of the union granted the union members compulsory process rights in a disciplinary hearing.  Id. at 385.  Moreover, "the right to subpoena a witness is not a requirement of a full and fair hearing under section 411(a)(5)(C)."  Id. (internal citation omitted).

Here, Keenan claims that "[a]t various stages of the trial [he] tried to call and recall pertinent witnesses that would have aided in his defense.  He was denied that right."  (Plaintiff's Objection at 11.)  Specifically, Keenan asserts that he wanted to call nine individuals plus all of the LL S6 auditors, but he was unable to do so.  Similarly, Keenan asserts that he wanted to recall two witnesses, Provost and Burroughs.  The record on summary judgment shows that after Rudis examined Provost, Keenan cross-examined him with the cross-examination limited to the subject matter of Rudis's direct examination.  Keenan then indicated that he wanted to recall Provost later to testify on Keenan's behalf, but Provost ignored him and refused to return.  Keenan claims that the STC witnessed the exchange.  A similar situation occurred with Burroughs, where after testifying against Keenan, Burroughs did not return to be recalled by Keenan.

At the heart of Keenan's argument is that he could not call or recall witnesses who would not voluntarily appear before the STC.  Although not explicitly stated, Keenan essentially argues that the STC should have forced those witnesses to appear and testify for Keenan.  However, the chair of the STC stated:  "It is not [the STC's] responsibility as the trial committee to bring in witnesses.  Our process is very simple.  [Keenan] can ask witnesses to appear voluntarily.  If they choose to, they do.  If they don't, they don't."  (Nauyalis Dep. at Page ID # 6149-50.)  Even with the ability to only call witnesses who would appear voluntarily, Keenan called twelve witnesses and cross-examined every witness that was called by Rudis.  The Court finds that Keenan was not denied his right to a full and fair hearing by his inability to force individuals to appear at the hearing and testify on his behalf.  Teamsters, 247 F.3d at 385 (citing United States v. IBT, No. 91-630, Order at 3 (2nd Cir. Mar. 27, 1992) and stating "most union members lack subpoena power in disciplinary hearings and therefore such power cannot be required by the 'full and fair hearing' requirement of the LMRDA").  Article L hearings before a special trial committee are not the equivalent of a trial before a federal court.  See Yager, 910 F. Supp. at 714.  Keenan was provided due process: he confronted every witness presented against him and could call to his defense anyone who would willingly testify.[11]

### b.    Documents Necessary For Keenan's Defense

Next, Keenan asserts that his right to a full and fair trial was denied because, despite repeated requests, he was not provided with documents that he believed were vital to his defense. However, union members facing union disciplinary proceedings are not, as a matter of right,

---

[11]  Keenan also points to a provision within the IAM Constitution, Article L, Section 9, in support of his argument. That section provides, "[w]itnesses shall be called into the trial chamber 1 at a time, and will leave the trial chamber upon completing their testimony, subject to recall by either the trial committee, the plaintiff, the defendant, or the representatives of the G.L."  (IAM Const. at Page ID # 3648.)  Keenan claims that the procedure followed by the STC violated this provision of the IAM Constitution.  Assuming that this section of the IAM Constitution applied to Keenan's Article L hearing, the Court does not find that this alleged procedural irregularity violated Keenan's right to a full and fair hearing under the LMRDA.  See Gillen, 341 Fed. App'x at 729-30; Yager, 910 F. Supp. at 713.

entitled to discovery.   Conway v. International Ass'n of Heat & Frost Insulators & Asbestos Workers, 209 F. Supp. 2d 731, 751 (N.D. Ohio 2002) aff'd, 93 F. App'x 780 (6th Cir. 2004); see also N.L.R.B. v. Valley Mold Company, Inc., 530 F.2d 693, 694-695 (6th Cir. 1976) (stating that "parties to judicial or quasi-judicial proceedings are not entitled to discovery as a matter of constitutional right.")  Thus:

> [T]he LMRDA does not require labor organizations to adhere to the Federal Rules of Civil Procedure, nor does it set forth specific pre-hearing discovery procedures. Thus, the International Union has discretion as to when and what discovery is available to the parties involved in a disciplinary hearing so long as the basic requirements of due process are not violated.

Conway, 209 F. Supp. 2d at 751.  In Conway, the union member facing disciplinary proceedings was provided with the letters of complaint that initiated the proceedings and the identities of the primary witnesses.  Id.  After being notified of the charges against him, the union member then presented the union with an "expansive discovery request."  Id.  The court held that the union member was not denied a full and fair hearing where the union offered to provide him with any specific document that he requested but denied his "expansive and burdensome pre-hearing discovery request."  Id. at 753.

Here, between early November 2008 and April 2009, on multiple occasions, Keenan requested information that he believed to be crucial in preparing for the preliminary hearing and the Article L hearing.  In response, Keenan was told that either he was already in possession of much of the information requested as a result of the trusteeship hearing and discovery in Keenan I or that he did not have a right to discovery.  (See Apr. 21, 2009 Ltr. from Nauyalis to Keenan at Page ID # 3473.)  Indeed, through discovery in Keenan I, Defendants produced to Keenan on or before February 4, 2009, over 7,500 pages of documents.   The Court finds that the basic requirements of due process were not violated.  Keenan was provided many of the documents

presented at the Article L hearing prior to the hearing, and he is simply not entitled to pre-hearing discovery as a matter of right under the LMRDA.  Although Keenan claims that he was presented with certain documents for the first time during the hearing, "constitutional due process does not require that the accused be notified of every witness and every item of evidence the charging body intends to use to prove its case."  Conway, 209 F. Supp. 2d at 752.  Moreover, in at least one instance, when Keenan indicated that he was reviewing a document for the first time during the hearing, the STC then took a break in the hearing.  (See Transcript of Article L Hearing (ECF No. 62-18) at Page ID # 2081-82.)  Therefore, the Court finds that Keenan's right to a full and fair hearing was not violated by the Defendants' refusal to provide him with all the documents used against him prior to the Article L hearing.

### c.      Tainted Tribunal

Finally, Keenan argues that his right to a "full and fair hearing" was violated because the prosecutor, Rudis, had ex-parte communications with the STC.[12]  When a prosecutor actively participates in deliberations of the decision-making body, there is an "inherent risk of taint which attaches to a prosecutor's ex parte presence as the hearing tribunal reaches its verdict [which] contravenes fundamental canons of procedural fairness."   Stein v. Mutuel Clerks' Guild of Mass., Inc., 560 F.2d 486, 491 (1st Cir. 1977).  However, this case stands in contrast to Stein, where the individual who acted as the prosecutor at the union's hearing then "took an active part in the private deliberations of the [trial committee] that resulted in the recommendation of fines against [the union members]."  Id. at 491.  Here, there is no allegation that Rudis participated in

---

[12]   In his Complaint, Keenan alleged that the members of the STC were biased against him.  (Complaint ¶ 40.)  However, Keenan has not pursued this line of argument on summary judgment and there is no evidence in the record to support any indication of bias by any member of the STC.  See, e.g., Johnson v. Holway, CIV.A.03-2513 ESH, 2005 WL 3307296, at *13 (D.D.C. Dec. 6, 2005) (stating that "a union tribunal may be found to be biased only when the plaintiff has offered specific allegations demonstrating 'actual bias' or a 'significant risk of actual bias.'" (internal citations omitted).)

the decision making process of the STC.  While Rudis did present evidence to the STC outside the presence of Keenan as part of the preliminary investigation, the Court finds no unfairness in that because the STC heard from Keenan outside the presence of Rudis the very next day.  The STC heard each of Keenan and Rudis separately only as part of the preliminary investigation, which was used to determine whether to proceed to a full hearing.  At the actual Article L hearings, there is no allegation that evidence was presented to the STC outside of Keenan's presence.

Furthermore, the involvement of the Union's attorneys does not raise the issue of bias. The evidence before the Court on summary judgment shows that the attorneys were consulted regarding the process of the preliminary investigation and the hearing and were also used as law clerks to assist the STC in drafting their decision only after the STC had already reached its decision.  In short, there is no evidence of a tainted tribunal in this case.

In summary, the Court finds that Keenan has failed to raise a genuine issue of material fact that his right to a full and fair hearing under the LMRDA was violated.  Therefore, the Court GRANTS summary judgment to Defendants on Keenan's claim of violation of his procedural rights under the LMRDA.

## IV.    CONCLUSION

For the reasons explained herein, Defendants' Motion For Summary Judgment (ECF No. 69) is GRANTED.  The Joint Motion For Oral Argument (ECF No. 84) is DENIED.


SO ORDERED.

/s/ George Z. Singal
United States District Judge


Dated this 28th day of March, 2013.

36